is our next case for argument this morning. Ms. Gailey.  Joseph Wilborn's trial counsel told the jury four times that it would hear from Cedric Jenkins. Jenkins' name was mentioned a total of 18 times in the opening statement. That's because Jenkins wasn't just any witness. He was the centerpiece of the opening and the defense's star witness. Well, right, but most of those references had to do with the fact that he was a shooter, right? Not the fact that he was going to be a witness for the defense. Four of the 18 had to do with the explicit expressed promises, yes. Right, so all the rest doesn't really – they don't matter. What we're focusing on are the promises that counsel made to the jury that they would hear from Jenkins. Your Honor, what the quantity of references to Mr. Jenkins goes to is how memorable he was and whether the jury would have been able to recall him after the promise was broken and the case went to the jury the following morning. He's a shooter. There's no question that the jury was going to remember him, regardless of what the defense attorney said in opening. Indeed, Your Honor, which underscores his importance. Right, he's a shooter. And so the question is whether the representation that defense counsel made in opening statements that the jury would hear from Jenkins in your client's favor. And then something changed, and then a record was made about what changed, that he was no longer going to be called because he was not going to be a favorable witness, in that he would not testify in your client's favor. And your client signed off on that on the record. So why are we here? Your Honor, in several other cases, including the Hampton case, the defendant acceded to the advice of counsel. I understand that you're relying on the Hampton case for a per se rule that if the defense lawyer refers to somebody in opening statement, that person has to be called. How does Hampton benefit you, given the language of 2254D, which says that relief is available only when the state court violates law clearly established by the Supreme Court of the United States? We think very highly of our decisions, but we are not the Supreme Court of the United States. What Supreme Court decision establishes the per se rule that you want us to use? Your Honor, we're not advancing the theory that this is a contrary to case, under which the same set of facts produces a different result. No, look. 2254D uses the Supreme Court to modify both clearly established and an unreasonable application. What decision of the Supreme Court clearly establishes that a person referred to in an opening statement must be called? This is an unreasonable application of Strickland, Your Honor. Strickland certainly does not establish that rule. Strickland establishes a rule that the overall quality of the representation, soup to nuts, matters. But you aren't asking us to look at the overall quality of the representation. You're asking us to look at one thing in which you say is a per se rule. There is no per se rule to be found in Strickland. So I ask again, what decision of the Supreme Court establishes this as a per se rule? None yet, Your Honor, but please. Okay. Well, but we've now got 2254D, which says law clearly established by the Supreme Court. Your Honor, neither Harrington v. Richard nor Cullen v. Pinholster impose that requirement, which is in essence equivalent to the Al-Kid standard in a qualified immunity case. This court has never applied that in an unreasonable application case to our knowledge. And, indeed, if this court is thinking about— That's the language of the statute. You are relying, to the extent I can figure it out, on decisions of the Seventh Circuit. And whenever a court of appeals relies on its own decisions to justify collateral writ against a state judgment, it gets summarily reversed, usually in pretty nasty decisions by the Supreme Court, which ask, essentially, where did those people go to law school? Can't they read? Your brief doesn't mention the text of 2254D, not one word. I'm giving you the opportunity to try to meet the statute. Your Honor, given the importance of this issue, if this is something that the court is thinking, we would ask for the opportunity to submit additional briefing. No, it's too late for that. You have to address questions like this in your opening brief. You don't get to file two briefs, the second one after oral argument. Understood, Your Honor. The statute is what it is. Decisions such as Kernan v. Cuerra, which summarily reversed a court of appeals for relying on circuit precedent, were decided long before you filed your brief. Your Honor, our position is that the AEDPA standard has not changed since Hampton. Is there any Supreme Court decision you are relying on? You've cited one, Strickland, which does not establish any per se rule. Is there any other? No, Your Honor, because we are not asking for a per se rule. You certainly are not analyzing everything that Wilbourn's lawyer did for him. That's what Strickland calls for. Because the broken promise under these circumstances was so damaging in— and this is the lesson of Hampton, Your Honor, that— Hampton counts for nothing. Just citing Hampton in this case invites summary reversal. This is covered by 2254D. That's why you need the Supreme Court precedent. Your Honor, the key parallel is that there was no additional evidence produced in favor of Mr. Wilbourn's case. And under those circumstances, the inherent prejudice of the broken promise is free to contradict and undermine the petitioner's own case. That's textbook ineffective assistance, deficient performance, and prejudice. Your Honor, I just want to clarify that time has been reserved for rebuttal. I see I started with 10 minutes, and I'm getting below— Certainly, counsel. And with that, I will reserve the balance of my time for rebuttal. Thank you. Mr. Kriegel. Good morning, and may it please the Court. I'm Assistant Attorney General Jason Kriegel for Respondent. And I'll just start with a brief point about Hampton because even Hampton does not establish a per se rule that an attorney cannot make a promise and then change course. What Hampton says explicitly is that it's unreasonable to abandon a promise for reasons that were apparent at the time the promise was made. And, of course, we don't know on the record that was before the state court even what counsel's reason was for deciding not to call Mr. Jenkins. And the reason we don't know is because petitioner— Do we really? I thought it was agreed between the parties that Jenkins was extraordinarily unreliable and kept changing his story about what he would say. Perfectly believable that at one time counsel thought he would exculpate Wellborn. And by the time the time came to do it, Jenkins was saying the opposite. Well, it certainly seems from—based on counsel's opening statement that counsel anticipated that Jenkins was going to testify that both petitioner and Jenkins acted in self-defense and that something happened during trial and counsel learned that that was apparently not what Jenkins was going to testify to. And counsel explained to petitioner why he was not calling Jenkins and— And Wellborn agreed. And Wellborn agreed, correct. And so here the petitioner could have put forth an affidavit explaining, and presumably would have if it were helpful, why counsel made this decision. And under Cullen v. Finholster, this court has to presume that counsel had a good reason for doing what he did. And petitioner is essentially asking for the opposite presumption. So I guess unless the court has other questions, we'd ask that the district court be affirmed. Thank you very much. Anything further, Ms. Galey? Yes, Your Honor. Two brief points on rebuttal. First is about the affidavit as to what exactly counsel was thinking. Mr. Wellborn did not get an evidentiary hearing at the state level or the district court level, even though he asked for it in both places. And he also made numerous requests for discovery. And so under circumstances like that where he showed diligence, this court will typically allow additional evidence to be gathered and considered. And also I might add that we do know from the record counsel's reasons for changing his mind with respect to Mr. Jenkins' testimony. And just assuming for purposes of argument that it was a reasonable characterization in Mr. Jenkins' testimony, that in his motion to sever at pages 647, 650, 61, and 656 of the record, he alluded to videotaped statements that Mr. Jenkins had made while he was charged with the same crime, but before he pled out, that tended to implicate Mr. Wellborn. And also the other dimension of that is that it gives rise to a fear of impeachment. And critically, both of those bits of information would have been well known to counsel before he made a decision to announce in his opening statement that Mr. Jenkins would testify unequivocally four times. And with that knowledge, there was no strategic advantage whatsoever to backing himself into a corner like that. So if the court has no further questions, we'll rest on the briefs and ask that the court reverse and remand with directions to grant the writ. Or in the alternative, if the court can't see to getting to a reversal on this particular record, to vacate and remand for an evidentiary hearing. Thank you, Your Honors. Thank you very much, counsel. And counsel, the court appreciates your willingness and that of your law firm to accept the representation in this case and your assistance to the court as well as your client. The case is taken under advisement.